IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

     v.                        Case No. 2:13-cr-255

Rodolfo Gonzales-Campos

OPINION AND ORDER

     Defendant Rodolfo Gonzales-Campos was charged by indictment returned on November 7, 2013, with one count of illegally re-entering the United States after being deported following his conviction of a felony offense, in violation of 8 U.S.C. §1326(a) and (b)(1).  The indictment charges:

> 1.  On or about the 19th day of September, 2013, in the Southern District of Ohio, the defendant, RODOLFO GONZALES-CAMPOS, an alien who had previously been deported from the United States after having been convicted of a felony crime, knowingly and unlawfully was found in the United States at Columbus, Ohio, the said defendant having not obtained the consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security for reapplication for admission into the United States.
>
> 2.  Defendant RODOLFO GONZALES-CAMPOS, was convicted on or about December 4, 2012, in the United States District Court for the Southern District of Ohio, in Case No. 2:12-cr-204, of illegal reentry of a removed alien.
>
> 3.  On or about March 23, 2010, April 3, 2010, February 14, 2012, and December 5, 2012, this defendant was deported from the United States after having been found illegally within the borders of the United States.

This matter is before the court on defendant's motion to dismiss the indictment.

I. History of the Case

     Defendant contests the validity of the removal order entered against him on March 16, 2010.  The record reveals that on March

12, 2010, defendant was discovered by Immigrations and Customs Enforcement ("ICE") in Columbus, Ohio when he was released from jail after being arrested on OMVI charges. Doc. 18, Ex. H. A notice to appear at removal proceedings in Cleveland, Ohio, was issued to defendant, charging him with being a native of Mexico who was not a citizen or national of the United States and who had not been admitted to the United States. Doc. 18, Ex. A. Defendant was ordered detained in the custody of the Department of Homeland Security pending the hearing. Doc. 18, Ex. B. The record includes a form in Spanish which advised defendant of his right to a hearing before an immigration judge, informed him that he could be detained or released on bond until the date of the hearing, and informed him that he had a right to consult with an attorney, that he would be provided with a list of attorneys who could represent him at little or no cost, that he had the right to consult with his country's consular service, and that he could use the telephone to call an attorney or his consular service. Defendant signed the form, thereby admitting that he was in the United States illegally, that he was not afraid to return to his country, that he was renouncing his right to a hearing before the immigration court, and that he wanted to return to his country as soon as his departure could be arranged. The form is also signed by Immigration Officer Luke Affholter, who certified that the notice was read by defendant, and that he also read the form to defendant in Spanish. Doc. 18, Ex. C.

The record also includes a form entitled "Stipulated Request for Removal Order and Waiver of Hearing." Doc. 18, Ex. D. The form is written in both English and Spanish. By signing the form,

defendant certified that the information he provided for the form was correct.  Ex. D, ¶ 17.   That information included the following: He was at least 18 years of age.  ¶ 1.  He received a copy of the March 12, 2010, notice to appear, with his full and correct name stated thereon.  ¶ 2.  He was advised of his right to be represented by a lawyer or other qualified person, and was provided a copy of a list of free legal providers, but waived his right to be represented in this matter.  ¶3.  He was advised that by signing the request, he was giving up rights he would have in a hearing before an immigration judge, including his right to question witnesses, to offer and object to evidence, and to require the government to prove his removability.  He knowingly waived these rights, and requested that his removal proceedings be held without a hearing and that the immigration judge issue an order based solely on the written record.  ¶ 4.  Defendant agreed that all of the factual allegations in the Notice to Appear were true and correct, and he conceded that he should be removed from the United States.  ¶ 5.  Defendant's eligibility or ineligibility for relief from removal and other benefits for which he may be eligible, including voluntary departure, had been explained.  It had been determined that he did not have derived or acquired United States citizenship.  ¶ 6.  Defendant was not eligible for, or waived his right to apply for, relief from removal, and was making no application for relief from removal or to depart voluntarily.  ¶ 7.  Defendant consented to the introduction of the Stipulated Request as an exhibit to the record of proceedings.  ¶ 8.  Defendant designated Mexico as his country of removal, and indicated that he had no fear of returning to that country.  ¶ 9.

Defendant requested that his removal be based solely on the stipulated request, and acknowledged that by signing the stipulated request, he was giving up the right to appear before an immigration judge and would be removed from the United States without a hearing. ¶ 10. Defendant agreed that he would accept a written order for removal as a final disposition of the removal proceedings. ¶ 11. Defendant understood that the consequences of the stipulated request and waiver of hearing would be his removal from the United States, and acknowledged that he was making the request voluntarily, knowingly and intelligently. ¶ 12. Defendant understood that by signing the stipulated request, he acknowledged receipt of the statement of appeal rights, and that he was waiving his right to appeal the written order for his removal from the United States. ¶ 13. Defendant understood that because of the removal, he would be barred from returning to the United States for ten years unless he sought a waiver from the Attorney General. ¶ 14. Defendant understood that if he returned to the United State without the Attorney General's consent, he could be fined and/or imprisoned and barred from re-entering the United States for twenty years. ¶ 15. Defendant acknowledged that he had read, and had read to him, the entire document in a language he understood, and that he understood its consequences. He agreed that he was submitting the request for removal voluntarily, knowingly, and intelligently, and he realized that by signing it, he would be removed from the United States. ¶ 16.

The stipulated request includes a certification signed by defendant, certifying that the stipulated request was translated to him from English to Spanish, and that all the information he had

provided was true and correct. Next to his signature, defendant wrote, "Yo voy para Mexico" or "I go to Mexico." The form also contains the signature of Officer Affholter, who certified that he had explained the contents and meaning of the document to defendant in the language which he understands.

On March 16, 2010, Immigration Judge Thomas W. Janas issued an order of removal. Doc. 18, Ex. E. The order noted that defendant had submitted a stipulation in which he waived a personal appearance before an immigration judge, and stated that he understood the consequences of his request and entered the request voluntarily, knowingly, and intelligently. The immigration judge found that defendant's waiver was voluntary, knowing and intelligent, and found him to be removable by clear and convincing evidence in the form of his own admissions. The immigration judge ordered that defendant be removed to Mexico. A warrant of removal was issued on March 23, 2010. Doc. 18, Ex. G. Defendant was removed from the United States at Laredo, Texas, on March 23, 2010. Doc. 18, Ex. F.

The record further reveals that on March 30, 2010, defendant was arrested by a United States border patrol agent after he illegally re-entered the United States by climbing over the boundary fence. Doc. 20, Ex. A. Defendant was advised of his right to speak with the Mexican consulate, and declined to do so. Defendant was served with a notice of intent to reinstate the prior removal order. This form indicated that defendant had previously been removed on March 23, 2010, under a removal order entered on March 16, 2010, and that defendant illegally re-entered the United States on March 30, 2010, near Douglas, Arizona. The form stated

5

that defendant was subject to removal by reinstatement of the prior order, and that he had a right to contest this determination by making a statement to an immigration officer. The form was signed by a border patrol agent, who indicated that the facts that formed the basis of the reinstatement determination and the right to make a statement contesting that determination, were communicated to the defendant in Spanish. Defendant signed the form and checked the box which indicated that he did not wish to make a statement contesting the reinstatement determination. Defendant was removed from Douglas, Arizona, on March 31, 2010.

The record also indicates that on April 2, 2010, defendant was again arrested by a border patrol agent near Douglas, Arizona, after climbing over the boundary fence. Doc. 20, Ex. B. Defendant was advised of his right to speak with the Mexican consulate, and declined to do so. He admitted that he entered the United States illegally, and signed the notice of reinstatement form, indicating that he did not want to make a statement contesting the reinstatement determination. He was removed from the United States at Douglas, Arizona on April 3, 2010.

Defendant was encountered again in the United States on February 8, 2012. Defendant was targeted as a previously deported alien by the ICE Fugitive Operations Team, and was arrested following a traffic stop in Columbus, Ohio. Doc. 20, Ex. C. The previous removal order was again reinstated, and defendant was removed from the United States from Laredo, Texas, on February 14, 2012. Defendant was again arrested in Columbus, Ohio, by the ICE Fugitive Operations Team on August 28, 2012. Doc. 20, Ex. D. He was charged by information in the United States District Court for

the Southern District of Ohio with unlawful re-entry after removal in violation of 8 U.S.C. §1326(a).  He pleaded guilty, and was sentenced on December 3, 2012, to time served.  <u>See</u> Case No. 2:12-cr-204.  He was removed from the United States later that month.  Most recently, defendant was targeted by the ICE Fugitive Operations Team and was arrested in Columbus, Ohio, on September 19, 2013.  Doc. 20, Ex. E.  His presence in the United States on that occasion is the subject of the charge pending in the instant case.

<u>II. Challenge to Removal Proceedings</u>

In a prosecution under 8 U.S.C. §1326, Congress has provided a procedure for a limited collateral attack on an underlying deportation order.  <u>See</u> 8 U.S.C. §1326(d).  That section provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that-
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

Section 1326(d).  "Because a final deportation order enjoys a presumption of regularity, once the government shows that the alien was deported while such an order was outstanding, the burden shifts to the defendant-alien, and it is he who must prove each of §1326(d)'s elements to overcome the presumed legality of the earlier deportation order."  <u>United States v. Adame-Orozco</u>, 607 F.3d 647, 651 (10th Cir. 2010); <u>see</u> <u>also</u> <u>United States v. Martinez-Rocha</u>, 337 F.3d 566, 568 (6th Cir. 2003)("defendant must

7

demonstrate that" the three prongs of §1326(d) have been satisfied).

As to the first element, defendant did not exhaust his administrative remedies, but instead waived his right to appeal the grounds on which he was removable. See Martinez-Rocha, 337 F.3d at 569. Defendant argues that he should be excused from the exhaustion requirement because his waiver was invalid. He argues, citing Ninth Circuit precedent, that the government bears the burden of proving that his waiver of rights was valid. See United States v. Ramos, 623 F.3d 672, 680 (9th Cir. 2010). However, as noted above, the Sixth Circuit has held that it is the defendant's burden to prove the elements of §1326(d). See also Richardson v. United States, 558 F.3d 216, 219 (3d Cir. 2009)(burden is on alien to prove that written waiver was invalid); United States v. Rangel de Aguilar, 308 F.3d 1134, 1137 (10th Cir. 2002)(noting that defendant presented no evidence to demonstrate that her waiver was not knowing and voluntary).

Defendant argues that the stipulation form does not provide an adequate basis for finding that his waiver of a hearing and appeal rights was knowing, voluntary and intelligent. He notes that no written copy of the statement of appeal rights was provided in discovery. He also argues that the immigration judge did not comply with 8 U.S.C. §1003.25(b) because he could not have reasonably found, based on the written stipulation, that defendant's waiver was knowing, voluntary, and intelligent.

Defendant does not factually attack the stipulated request form or its contents. He does not contend, for example, that he did not understand the form, or that he did not read it, or that

8

the statements he reportedly made in the form were inaccurately recorded, or that the officer failed to read the form to him in a language he could understand. The form is written in both English and Spanish. This is not a case where the form was written solely in English, thus placing the accuracy of the immigration officer's translation at issue. Defendant signed a certification acknowledging that he had read the form, and that the form was also read to him in a language he understood. Defendant initialed each paragraph. This suggests that the immigration officer's explanation of the form was thorough rather than cursory. Although the written statement of appeal rights is not in the record, defendant acknowledged receipt of that statement in the stipulated request and stated that he was waiving his right to appeal. See Doc. 18, Ex. D, ¶ 13. The fact that the appeal rights form was not found in defendant's immigration file suggests that the form was in fact given to him. Its absence does not cast doubt on its existence.

In signing the stipulated request form, defendant certified that he was submitting the request for removal voluntarily, knowingly, and intelligently, and that he realized that by signing the document, he would be removed from the United States without a hearing before an immigration judge. Doc. 18, Ex. D, ¶¶ 10, 16. He also certified that he understood that by signing the form, he would be removed from the United States and would be barred from returning for ten years unless he sought a waiver from the Attorney General. Doc. 18, Ex. D., ¶ 14. The immigration officer also signed the form, certifying that he had explained the contents and meaning of the document to defendant in a language which he

understood.   The stipulation form is sufficient to support a finding that defendant's waiver of rights was knowing, voluntary and intelligent.

Defendant also notes that if he had not signed the stipulated request, other immigration options which did not have the negative consequences of removal, such as voluntary departure, might have been available to him.  However, this does not mandate a finding that defendant's waivers were not knowing, voluntary or intelligent.  As the Sixth Circuit stated in Martinez-Rocha, "a waiver need not be the best choice under the circumstances in order for it to be 'considered and intelligent.'"  337 F.3d at 570 (citing United States v. Turner, 287 F.3d 980, 984 (10th Cir. 2002)).  When removal proceedings were initiated, defendant was held in custody, and no hearing date had been set before the immigration judge.  Defendant may have concluded that, instead of risking a lengthy period of incarceration while pursuing other avenues of relief, the most expeditious way of securing his release from custody was to agree to a stipulated request for removal.  In fact, defendant was removed to Mexico eleven days after he was taken into custody.  He was then able within the next two weeks to make two attempts to illegally re-enter the United States, and, at some point, he was successful in doing so.

The record also indicates that the immigration judge complied with §1003.25(b).  That section provides that an immigration judge may enter an order of removal stipulated to by the alien.  The immigration judge may enter the order without a hearing based on a review of the charging document, the written stipulation, and supporting documents, if any.  §1003.25(b).  If the alien is

10

unrepresented, the immigration judge "must determine that the alien's waiver is voluntary, knowing, and intelligent." §1003.25(b). Nowhere does §1003.25(b) state that the immigration judge is required to hold a hearing in the case of an unrepresented alien, or is required to address an unrepresented alien personally before making that determination. Rather, the immigration judge can rely on other evidence, including a written declaration by the immigration officer of the circumstances surrounding the waiver. See United States v. Gomez, 732 F.3d 971, 983 (9th Cir. 2013).

In his decision, the immigration judge stated that defendant's stipulated request was introduced as an exhibit in the record of proceedings. Doc. 18, Ex. E. That stipulated request included the certification of the immigration officer that he had explained the contents and meaning of the document to defendant in a language which he understood. The stipulated request also contained the certification of the defendant that the form had been translated to him in the Spanish language, and that all of the information he gave in the stipulated request was true and correct. The immigration judge specifically found that defendant's waiver was "voluntary, knowing, and intelligent." The judge noted that defendant conceded service of the charging document, admitted that all of the allegations therein were true, and conceded that he was removable. Doc. 18, Ex. E. The immigration judge did not err in concluding, based upon the signed stipulated request, that defendant's waiver of rights was knowing, voluntary and intelligent.

Defendant has also failed to show that he exhausted administrative remedies which would have been available to him,

11

notwithstanding his waiver, or that the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review. Defendant's claim that his stipulated request for a removal order and waiver of rights, including any waiver of appeal, was not voluntary, knowing, and intelligent, could have been raised in a timely appeal to the Board of Immigration Appeals, and then in a timely petition for review in the court of appeals pursuant to 8 U.S.C. §1252(b)(1). See Juarez-Chavez v. Holder, 515 F.App'x 463, 466 (6th Cir. 2013). Even aliens who have been removed may continue to pursue their petitions for review. Nken v. Holder, 556 U.S. 418, 435 (2009). Defendant could have filed a motion to reconsider the removal within thirty days of the entry of the final administrative order of removal. 8 U.S.C. §1229a(c)(6)(A) and (B). Defendant could also have filed a motion with the Board of Immigration Appeals within ninety days of the entry of the removal order to reopen the matter of his removal. See 8 U.S.C. §1229a(c)(7)(A) and (C)(i). Defendant could have filed such a motion from Mexico. Cordova-Soto v. Holder, 732 F.3d 789, 794 (7th Cir. 2013); Pruidze v. Holder, 632 F.3d 234, 235 (6th Cir. 2011)(Board of Immigration Appeals has jurisdiction to consider alien's petition to reopen even when alien is no longer in the United States). Defendant has not shown that he pursued any of the above procedures to contest his removal.

As to the final §1326(d) factor, defendant argues that the immigration proceedings were fundamentally unfair. The fundamental unfairness prong requires a showing of procedural error and prejudice. United States v. Luna, 436 F.3d 312, 319 (1st Cir. 2006); see also United States v. Arita-Campos, 607 F.3d 487, 493

12

(7th Cir. 2010)(to establish fundamental unfairness, defendant must show that his due process rights were violated and that he suffered prejudice from the deportation proceedings). A deportation proceeding is a civil action, and the procedures required are as delineated by Congress and the Attorney General. Rangel de Aguilar, 308 F.3d at 1137 (10th Cir. 2002). Waivers made in a stipulated request are not rendered unfair because they were taken by an immigration officer rather than a neutral magistrate. See id. at 1138.

The only prejudice cited by defendant resulting from the removal proceedings in his case is that he was not advised by the immigration judge of the possibility of voluntary departure, and that, but for his stipulated request, he would have been eligible for a discretionary grant of voluntary departure pursuant to 8 U.S.C. §1229c(a). However, the stipulated request signed by defendant included language that defendant had "been explained my eligibility or ineligibility for relief from removal and the benefits for which I may be eligible including, but not limited to, voluntary departure[.]" Doc. 18, Ex. D, ¶ 6. The stipulated request also stated, "I make no application for relief from removal such as would allow me to remain in the United States or to depart voluntarily." Ex. D, ¶ 7. This indicates that defendant was aware of the option of requesting a voluntary departure, yet chose expedited removal through his stipulated request.

In addition, the Sixth Circuit has held that an alien has no constitutionally-protected liberty interest in obtaining discretionary relief from deportation. Ashki v. Immigration and Naturalization Service, 233 F.3d 913, 921 (6th Cir. 2000); see also

13

United States v. Galaviz-Galaviz, 91 F.3d 145 (table), 1996 WL
413478 at *3 (6th Cir. July 23, 1996)(defendant's deportation
hearing was not fundamentally unfair; immigration judge was not
required to explore what possible theories might be available to
find an alien eligible for discretionary relief).   The majority
position is that a defendant has no constitutionally-protected
liberty interest in obtaining discretionary relief from
deportation, including voluntary departure.   See United States v.
Barba, No. 3:08-CR-46 (unreported), 2009 WL 1586793 at *9-11
(E.D.Tenn. June 3, 2009)(defendant had no constitutionally
protected due process interest in being advised by immigration
judge of the possibility of voluntary departure); see also Arita-
Campos, 607 F.3d at 493 (because the availability of voluntary
departure is a discretionary decision, defendant's allegation that
he was unable to seek voluntary departure did not establish a due
process violation).   The defendant has failed to show that the
removal proceedings were fundamentally unfair or that he suffered
prejudice as the result of any procedural error.

III. Conclusion

       In accordance with the foregoing, the court finds that
defendant has failed to sustain his burden under §1326(d) of
establishing the elements necessary for a successful collateral
attack on the removal order in his case.   The motion to dismiss the
indictment (Doc. 18) is denied.

IV. Motion to Hold Case in Abeyance

       Defendant has also moved to hold this case in abeyance pending
the outcome of his motion filed pursuant to 28 U.S.C. §2255 to
vacate his conviction for illegal re-entry in Case No. 2:12-cr-204.

14

In that case, defendant argues that his attorney was ineffective in advising him to plead guilty rather than attacking his removal order under §1326(d).  Defendant asks to hold the instant case in abeyance until the habeas proceedings are resolved.

Defendant notes that in responding to his motion to dismiss in this case, the government argued that defendant waived any due process challenge to the validity of the removal proceedings by pleading guilty in the previous case.  However, this court did not rely on the government's waiver argument in concluding that defendant has failed to establish the §1326(d) elements for a collateral attack of the removal order in this case.  This court's ruling on the motion to dismiss is independent of any argument which might be made concerning the validity of the defendant's prior guilty plea.

The indictment in the instant case was returned on November 7, 2013.  The previous conviction in Case No. 2:12-cr-204 is alleged as the prior felony conviction in the instant case which increases the maximum possible penalty to ten years incarceration.  Defendant filed his motion to vacate in Case No. 2:12-cr-204 on December 17, 2013.  The §2255 proceedings are not subject to the speedy trial provisions of 18 U.S.C. §3161.  The §2255 proceedings could go on for a considerable period of time while the allegations of ineffective assistance of counsel are addressed, or while an appeal is pursued.  The judge assigned to that case could conceivably find that circumstances existed in that case which warrant a finding that counsel was not ineffective in advising defendant to plead guilty without resolving the issue of the validity of the removal proceedings.

15

In contrast, the instant criminal proceedings are subject to the speedy trial provisions of 18 U.S.C. §3161. This court has the authority to address defendant's §1326(d) argument in this case, and has done so. At this point, defendant's 2012 conviction is valid and has not been set aside. If defendant is convicted in this case, he can appeal this court's ruling on his §1326(d) challenge. The court concludes that it would not be in the best interests of the defendant or the public in a speedy trial to indefinitely delay further proceedings on this indictment pending the outcome of defendant's §2255 petition. Such a delay would pose the risk that witnesses or evidence might become unavailable, and would result in the defendant being held for a substantial period of time in a state facility under harsher conditions than those found in a federal institution. The motion to hold the instant case in abeyance (Doc. 21) is denied.

Date: March 18, 2014          _____s/James L. Graham_____
                              James L. Graham
                              United States District Judge

16